IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LYN C.,[1]                                              No.  6:18-cv-01817-HZ

                Plaintiff,                       OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.


Katherine L. Eitenmiller
Mark A. Manning
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette Street
Eugene, OR 97401

       Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.  Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Ryan Ta Lu
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Lyn C. seeks judicial review of the Commissioner's final decision to deny

disability insurance benefits ("DIB").  This Court has jurisdiction pursuant to 42 U.S.C. §

405(g).  The Court reverses the Commissioner's decision and remands for further proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on April 27, 2015, alleging an onset date of November 14, 2014.

Tr. 13.[2]  Her application was denied initially and on reconsideration.  *Id*.  On July 26, 2017,

Plaintiff appeared with her counsel for a hearing before an Administrative Law Judge ("ALJ").

*Id*.  On October 30, 2017, the ALJ found that Plaintiff is not disabled.  Tr. 10.  The Appeals

Council denied review.  Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on her spinal disorder and fibromyalgia.  Tr. 16.  At the

time of the hearing, she was 51 years old.  Tr. 22.  She has "at least a high school education" and

has past relevant work experience as an office nurse and a clinical nurse.  Tr. 22, 52.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative
record, filed herein as Docket No. 9.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Disability claims are evaluated according to a five-step procedure.  *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).  The claimant bears the ultimate burden of proving disability.  *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.  *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform their "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can perform past relevant work, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts

to the Commissioner.  In step five, the Commissioner must establish that the claimant can

perform other work.  *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

If the Commissioner meets that burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled.  20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after her amended alleged onset date.  Tr. 15.  Next, at steps two and three, the ALJ

determined that Plaintiff has the following severe impairments: "spinal disorder and

fibromyalgia."  Tr. 16.  However, the ALJ determined that Plaintiff's impairments did not meet

or medically equal the severity of a listed impairment.  Tr. 17.  At step four, the ALJ concluded

that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R.

§§ 404.1567(b) with the following limitations: she is restricted to occasionally climbing ladders,

ropes, and scaffolds.  Tr. 17.  With those limitations, the ALJ concluded that Plaintiff could

perform her past relevant work as an office nurse.  Tr. 22.  At step five, the ALJ found that there

are additional jobs that exist in significant numbers in the national economy that Plaintiff can

perform, such as office helper, photocopy machine operator, and marker.  Tr. 23.  Thus, the ALJ

concluded that Plaintiff is not disabled.  *Id.*

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted).  "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The Court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by discounting the weight he gave to the opinions of Plaintiff's treating physician, Plaintiff's subjective symptom testimony, and the lay witness testimony of Plaintiff's husband.

### I.    Plaintiff's Subjective Symptom Testimony

The ALJ found that Plaintiff's subjective symptom testimony was not entirely consistent with the medical evidence. The Commissioner uses a two-step analysis to determine the credibility of a claimant's symptoms. Social Security Ruling ("S.S.R.") 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). If the claimant produces evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged," and there is no evidence of malingering, then the ALJ must evaluate the intensity and persistence of their symptoms to determine the extent to which the claimant's symptoms limit their ability to perform work-related activities. *Lingenfelter*, 504 F.3d at 1036; S.S.R. 16-3p, 2016 WL 1119029, at *4. To do so, the ALJ must compare the claimant's subjective complaints to the

objective medical evidence in the record as a whole and must identify specific, clear, and convincing reasons supported by substantial evidence in the record to support its credibility analysis. *Lingenfelter*, 504 F.3d at 1036. The clear and convincing standard is the highest standard that an ALJ is required to meet in Social Security cases. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). When determining a claimant's credibility, the ALJ may consider the objective medical evidence, the claimant's history of treatment, work activities, and activities of daily living. *Ghanim*, 763 F.3d at 1163. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

When a claimant has fibromyalgia, the ALJ should consider the claimant's symptoms in light of the unique characteristics of fibromyalgia when determining whether she has the symptoms that she alleges. *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). Analysis of a claimant's RFC should recognize that fibromyalgia symptoms wax and wane, and the ALJ "should consider 'a longitudinal record whenever possible'" in determining what limitations to include in the RFC. *Id.* (quoting S.S.R. 12-2p, 2012 WL 3104869, at *6 (Jul. 25, 2012)).

The ALJ did not find any evidence of malingering. As a result, he was required to identify specific, clear, and convincing reasons supported by substantial evidence in the record to discount Plaintiff's subjective symptom testimony. *Lingenfelter*, 504 F.3d at 1036. The ALJ discounted Plaintiff's subjective symptom testimony because (1) Plaintiff's symptoms were controlled with medications; (2) her allegations of "fibro fog" and "brain fog" were unsupported by the record; and (3) her symptoms were inconsistent with her activities of daily living. The Court finds that the ALJ articulated clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's testimony concerning her "fibro fog" and "brain

fog." However, the ALJ failed to articulate clear and convincing reasons supported by substantial evidence in the record to reject the remainder of her subjective symptom testimony.

### A.    Pain Control with Medications

The ALJ rejected Plaintiff's subjective symptom testimony in part because he found that her symptoms were adequately controlled with medications. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted). Plaintiff described her symptoms in a Function Report and during her testimony at the hearing. Tr. 37–50, 267. Plaintiff's fibromyalgia symptoms include daily pain, fatigue, and difficulty concentrating and thinking clearly, which she called "fibro fog" or "brain fog." Tr. 38, 267. She also has weekly migraine headaches that develop over the course of a day and last for two to three days, and she experiences problems with unclear thinking, severe pain, nausea, vomiting, and light sensitivity with her migraines. Tr. 38, 45, 48. Plaintiff experiences symptoms of her gastroparesis once or twice a month, which include gastroesophageal reflux, constipation, and diarrhea, and she often experiences symptoms of her gastroparesis when she is having a migraine or fibromyalgia flare. Tr. 46.

Plaintiff explained that due to her symptoms, she spends a lot of time flat in bed, travel is exhausting and requires her to rest for two to three days afterward, and her husband does about ninety percent of the shopping and housework. Tr. 42. She can do one or two loads of laundry per week and do dishes, but she is not able to do chores every day. Tr. 268. She can let her dogs into the backyard when her husband is not home and walk from room to room of her house. *Id*. She must lie down or nap most days to relieve her symptoms. *Id*. Plaintiff testified that she usually cannot make the hour and a half drive to her cabin without stopping to stretch and rest along the way due to her pain and testified that she usually feels fatigued for days after traveling

to her cabin.  Tr. 40, 43.  She is unable to ski, hike, or run due to her pain and fatigue.  Tr. 43.
She testified that she experiences fibromyalgia flares several times per month and that although
sometimes she can get control over some of her fibromyalgia symptoms during the flares with
medication, the medication does not reduce her fatigue.  Tr. 44.

In support of his conclusion that Plaintiff's pain was adequately controlled with
medications, the ALJ relied on records from Plaintiff's January 2016, October 2016, and March
2017 doctor visits.  The ALJ relied on the January 2016 record because it showed that Plaintiff
had reported that Vicoprofen worked well for pain control.  Tr. 19.  When read in isolation, that
record suggested that Plaintiff's pain was well-controlled.  However, the ALJ may not cherry-
pick an instance in the record to demonstrate control of her symptoms with medications when the
record as a whole supports Plaintiff's subjective symptom testimony.  *Garrison*, 759 F.3d at
1015 (noting that "cycles of improvement and debilitating symptoms" are common with
psychological disorders and finding that it was error for the "ALJ to pick out a few instances of
improvement over a period of months or years and treat them as a basis for concluding that a
claimant is capable of working.") (citation omitted).

The record demonstrates that Plaintiff suffered from significant pain on a near-constant
basis despite her medications.  *See, e.g.*, Tr. 559 (average pain five out of ten with two to three
migraines per week in December 2016); Tr. 557 (average pain seven to eight out of ten four to
five days a week in March 2017); Tr. 563 (pain four to five out of ten with migraines twenty out
of every thirty days in October 2016); Tr. 464 (in August 2015 reporting a migraine for the last
twenty four hours with nausea, vomiting, and little relief with her typical abortive measures); Tr.
469 (reporting in March 2015 that she had left her part-time work as a nurse when it became too
much for her due to pain, some fog, and migraines).  The ALJ was required to consider the entire

longitudinal record in light of the unique characteristics of fibromyalgia together with the symptoms of her non-severe impairments when determining the RFC.  *Revels*, 874 F.3d at 657. The longitudinal record reflects that her fibromyalgia pain, fatigue, and migraine headaches significantly limited her ability to function, even with medications.  As a result, the January 2016 record does not supply a clear and convincing reason to reject her testimony.

The ALJ also discounted her testimony based on an October 2016 medical record.  The ALJ noted that, in October 2016, Plaintiff reported a reduction in her pain level to four to five on a scale of one to ten while tapering her medications and reported that Naltrexone was starting to work.  Tr. 19.  The ALJ also pointed out that Dr. Hurtado had observed that she rose easily, although she moved slowly.  *Id*.  The ALJ failed to explain how Plaintiff's ability to stand easily, but slowly, from a chair supports his conclusion that her pain was adequately controlled with medications.  Similarly, Plaintiff's report that a medication that she had just started taking was "starting to work" does not demonstrate that the medication adequately controlled her symptoms. Neither of those reasons were clear and convincing reasons to conclude that her pain was adequately controlled with medications.

The ALJ's statement that Plaintiff reported a "reduction in her pain level" to four to five out of ten mischaracterized the October 2016 record.  Plaintiff did not say that her pain had reduced, she said that her pain was four to five out of ten.  Tr. 562.  At her previous visit a month earlier, she had reported that her pain was five out of ten, so her October pain rating was at most a very slight reduction from the previous month.  Tr. 565.  In October 2016, in addition to rating her chronic pain level four to five out of ten, she also reported that her migraine headaches had increased to a frequency of twenty out of every thirty days.  Tr. 562.  Overall, the October 2016

record does not demonstrate an improvement of her symptoms or adequate control of her chronic pain and migraine headaches with medications.

The March 2017 record, which the ALJ also relied on to conclude that her pain was adequately controlled with medications, indicated that Plaintiff had presented to "follow up on her chronic pain issues and fibromyalgia. She has been mostly stable with her current regimen." Tr. 556. The March 2017 record indicated that Plaintiff was taking Tramadol three times daily, Naltrexone at night, and Norco for more severe pain and migraines. *Id*. She reported that her pain level with those medications was "7-8/10 four to five days per week." *Id*. The ALJ relied on that record to support his finding that "the claimant was stable on her current regimen, leading to the decision to continue her current medications" and that she was "feeling better in regard to migraines." Tr. 19.

The stability of a condition on a medication regimen does not establish that a claimant's symptoms are adequately controlled with medications. *See*, *e.g.*, *Timothy S. v. Comm'r*, No. 6:17-CV-02043-HZ, 2019 WL 2006689, at *5 (D. Or. May 3, 2019) ("[T]he stability of Plaintiff's symptoms does not indicate that the pain is resolved, only that it is not getting worse."); *Kirk M. v. Comm'r*, No. 6:17-cv-01663-HZ, 2018 WL 6651525, at *4 (D. Or. Dec. 19, 2018) (finding that a plaintiff's stable glaucoma did not mean the plaintiff was no longer visually impaired); *Kimberly S. v. Comm'r*, No. 3:17-cv-01956-HZ, 2018 WL 6198275, at *6 (D. Or. Nov. 28, 2018) (finding that a plaintiff's stable mood was unrelated to the opinion of a nurse practitioner that the plaintiff had marked limitations); *Kluthe v. Berryhill*, No. 1:16-cv-00742-JLT, 2018 WL 775298, at * 9 (E.D. Cal. Feb. 8, 2018) (noting that courts have concluded that an ALJ erred by rejecting a physician's opinion on the basis that a condition was stable, "[g]iven the difference between *stability* and *functionality*") (emphasis in original) (citing cases).

Although Dr. Hurtado found that Plaintiff's condition in March 2017 was "mostly stable" to the extent that no changes to her medication regimen were necessary, the stability of her condition did not mean that she was able to perform regular work activity. She continued to experience significant pain and limitations at that time, including pain that she rated seven to eight on a scale of one to ten, which occurred four to five days a week, and migraine headaches that were better, but not absent. Tr. 556. Although Plaintiff's condition was stable on her medication regimen, that was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony that her symptoms preclude her from performing regular work activities. *See Garrison*, 759 F.3d at 1015. Accordingly, the ALJ erred when he rejected Plaintiff's testimony on the basis that her symptoms were adequately controlled with medications.

### B.    Fibro Fog and Brain Fog

Plaintiff testified that she experiences "fibro fog" as a result of her fibromyalgia and a similar "brain fog" as a result of her migraines, which causes her to have difficulty thinking, concentrating, and working with numbers. Tr. 48. Plaintiff testified that her level of cognition is "way off from where it used to be." *Id.* The Social Security Administration has recognized that "fibro fog" is a common symptom of fibromyalgia. S.S.R. 12-2p, 2012 WL 3104869, at *3 (Jul. 25, 2012) (noting that "manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome" are common symptoms and co-occurring conditions commonly associated with fibromyalgia). The ALJ rejected Plaintiff's testimony concerning her "fibro fog" and "brain fog" because the reference to "fibro fog" in Plaintiff's March 2016 medical record failed to explain what the symptom means or how it affects the claimant in terms of frequency and duration. Tr. 19 (citing Tr. 542). At her March 2016 visit with Dr. Hurtado, Plaintiff explained that her fibromyalgia symptoms had

increased over the last decade and included "intractable pain, fibro-fog, and depressive symptoms." Tr. 542. Plaintiff had also reported fog associated with her fibromyalgia in 2015, when her treating doctor noted that she reported "some fog" with her fibromyalgia. Tr. 430.

The evidence in the record reflects that her treating physician documented her complaints about fibro fog only twice. Tr. 542, 430. The lack of support in the record for Plaintiff's claims that she experiences frequent and significant symptoms of fibro fog is a clear and convincing reason to reject her testimony about the frequency and duration of her "fibro fog," and the ALJ did not err when he rejected her testimony on that basis.

### C.    Daily Activities

An ALJ may consider a claimant's activities of daily living when making a credibility determination in two ways: (1) to illustrate inconsistency between the activities and the claimant's testimony; and (2) to show that a claimant's activities of daily living demonstrate transferable work skills that are inconsistent with disability. *Orn*, 495 F.3d at 639; *Fair*, 885 F.2d at 603. "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).

First, the ALJ found that Plaintiff's subjective symptom testimony was inconsistent with her daily activities because she looked for work in 2013. The ALJ allowed her to amend her alleged onset date to 2016, three years after she looked for work. The fact that Plaintiff looked

for work three years before she claims to have become disabled is not a clear and convincing

reason to reject her testimony. The ALJ erred by rejecting her testimony because she looked for

work in 2013.

       The ALJ also found her subjective symptom testimony inconsistent with her daily

activities because she does not have any "direct difficulty" with driving. Tr. 20. The ALJ noted

that Plaintiff drove to the pharmacy twice a week, drove herself to the administrative hearing,

and had traveled to her cabin. *Id*. Plaintiff's pharmacy is located a little over a mile away from

her house. Tr. 42. The fact that, twice a week, her symptoms are manageable enough to drive a

short distance to the pharmacy is not inconsistent with her testimony. She testified that because

her symptoms wax and wane, she experiences periods when she is not "too horribly

symptomatic," but her symptoms are much worse on other days when her fibromyalgia flares up.

Tr. 37. When Plaintiff testified at the hearing that she was able to go to her cabin, she explained

that "it takes about an hour and a half to two hours to get there, and those trips are just

increasingly hard for me to manage, just the exhaustion of sitting, driving, riding, having to stop,

get up, stretch . . . . And then the fatigue, the overwhelming fatigue that comes after something

like that is days before I feel better." Tr. 40.

       Plaintiff explained that although her impairments and symptoms do not completely

prevent her from being able to perform certain activities, such as driving, the resulting symptoms

can be severe. She explained that "[a]nything that causes stress in terms of, you know,

mechanical stress on my body, just either from having to sit up too long, any kind of stress or

hiking, running, anything like that is impossible now. And although I might be able to do those

things on a one-time isolated basis, I would be down for a week" afterward with a fibromyalgia

flare-up. Tr. 44. Being "down for a week" with a fibromyalgia flare-up, Plaintiff explained,

meant that she would be "on the couch or in the bed, getting up really only to go to the bathroom, and maybe make a really quick meal, like a sandwich[,] and go right back to bed." *Id*. Her testimony is supported by the medical evidence in the record. For example, in September 2016, Plaintiff reported that basic daily tasks, such as showering, were completely exhausting. Tr. 565.

Plaintiff's ability to look for work in 2013, three years before her alleged onset of disability, drive to the pharmacy twice a week, and travel in a car with breaks to rest do not undermine her testimony that she experiences daily pain, fatigue, and frequent migraines that have caused her significant limitations since 2016. As a result, her daily activities do not supply a clear and convincing reason to reject her subjective symptom testimony. *Orn*, 495 F.3d at 639 (mere fact that claimant can carry out certain minimal activities does not detract from credibility as to overall disability or meet threshold for transferable work skills); *Molina*, 674 F.3d at 1112–13 (the claimant need not vegetate in a dark room to qualify for social security benefits); *Reddick*, 157 F.3d at 722 (the ALJ may not penalize a claimant for trying to lead a normal life in the face of their limitations). The ALJ erred by discounting her subjective symptom testimony based on those activities.

## II.    Treating Medical Source Opinion

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Garrison*, 759 F.3d at 1012. Generally, more weight is given to the opinion of a treating physician than to the opinion of a physician who does not treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). More weight is given to the opinion of an examining physician than to a non-examining physician. *Garrison*, 759 F.3d at 1012.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r*,

528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

2005)) (brackets in *Ryan*).  "If a treating or examining doctor's opinion is contradicted by

another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons

that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d

at 1198).  When deciding whether to accept or reject a medical opinion, the ALJ must consider

whether the source is an examining or treating physician, the length of the treating relationship

and the frequency of treatment, supportability of the opinion, consistency of the opinion with the

record as a whole, the specialization of the source of the opinion, and other factors.  20 C.F.R. §

404.1527(c).

     Plaintiff argues that the ALJ erred when he assigned little weight to the opinion of Dr.

Hurtado, Plaintiff's treating physician.  The agency reviewing physicians found that Plaintiff was

capable of performing light work.  Tr. 64-65, 78-79.  Because Dr. Hurtado's opinion is

contradicted by the agency reviewing physicians, the ALJ was required to provide specific and

legitimate reasons supported by substantial evidence in the record to discount Dr. Hurtado's

opinion.  *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198).  The ALJ identified the

following reasons for assigning little weight to Dr. Hurtado's opinion:

> Dr. Hurtado described the claimant's signs as 'classic fibro exam', but failed to
> provide the requested clinical findings and test results (Ex. 4F-2). Check-marked
> answers included a need to lie down or rest periodically during the day, but again,
> the doctor failed to provide requested answers as to how long. He also check[-]
> marked an answer that indicated the claimant would be absent from work more than
> 4 days per month, but failed to provide references to objective medical findings in
> support of this conclusion. In addition, this form does not enlighten the reader as to
> whether and/or how long Dr. Hurtado had treated the claimant, which undercuts the
> value of his conclusions.

Tr. 21.  The ALJ discounted Dr. Hurtado's opinion, in part, because Dr. Hurtado did not specify

the duration and frequency with which he had treated the claimant.  Tr. 21.  That is not a

legitimate reason to reject his opinion.  The ALJ was required to consider the length of the

treating relationship and the frequency of examination in analyzing Dr. Hurtado's opinion. 20 C.F.R. § 404.1527(c)(2)(ii). The records reflect that Dr. Hurtado first saw Plaintiff on November 29, 2012, and she attended twenty-five visits with him in the four and a half years that he treated her until May 8, 2017. Tr. 423–499, 538–543, 550–552, 556–567, 568–569. The ALJ's failure to consider the frequency and duration of Dr. Hurtado's treatment of Plaintiff was error, and Dr. Hurtado's failure to describe the length of his treatment relationship, which was apparent from the record, was not a legitimate reason to discount his testimony.

The ALJ also discounted Dr. Hurtado's opinion because he failed to adequately explain it. A doctor's failure to explain his conclusions is a legitimate reason to discount his opinion. *Molina*, 674 F.3d at 1111 (An ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions."); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than those that are not."); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (affirming ALJ's rejection of doctor's opinion that "failed to explain the extent or significance" of the plaintiff's symptoms).

Dr. Hurtado failed to adequately explain his opinions. For example, he based his opinions on clinical signs that he characterized as a "classic fibro exam," but he did not explain what those signs were or how they affected Plaintiff, beyond his note in response to another question that she experienced symptoms of "chronic myofascial pain, 'fibro fog,'" and "chronic fatigue." Similarly, Dr. Hurtado did not explain his opinion that Plaintiff needed to lie down or rest periodically during the day. In response to a question that asked him whether she needed to rest throughout the day and asked him to explain how long she needed to rest and the reason she needed to rest, he checked the box marked "yes" and answered, "fatigue/pain," without further

explanation.  Dr. Hurtado also did not explain why he believed that Plaintiff would miss work more than four days per month or state which of her symptoms would cause her absence from work.  Because Dr. Hurtado failed to explain his conclusions, the ALJ did not err by discounting Dr. Hurtado's opinion.

### III.    Lay Witness Testimony

Plaintiff's husband provided Function Reports in 2015 and 2016.  Tr. 259–66, 299–306.  The ALJ gave the lay witness testimony of Plaintiff's husband little weight because he gave "different descriptions of the claimant's abilities without indicating any deterioration in her condition."  Tr. 21.  The ALJ may discount a lay witness's testimony by providing germane reasons supported by substantial evidence in the record.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  Inconsistency between statements made by the same lay witness is a reason germane to the witness to reject their testimony.  *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (noting that "incongruity" between statements made by a lay witness is a reason germane to the witness to discount their testimony).

The 2015 Function Report completed by Plaintiff's husband noted that Plaintiff has no strength or energy and said that her fatigue is sometimes overwhelming.  Tr. 259.  He observed that Plaintiff spent about 70% of her time between her bed and the couch.  Tr. 260.  He indicated that her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and use her hands.  Tr. 264.  He stated that she could perform chores for twenty to thirty minutes at a time twice a day, four to five times per week.  Tr. 261.  Plaintiff's husband said that she is able to prepare snacks and simple meals, but she is unable to cook a full prepared meal.  *Id*.  He indicated that although Plaintiff used to be able to snow ski, water ski, backpack, and had helped her husband remodel two homes, she was no longer able to

do any of those things.  Tr. 260.  He also noted that if she were to lift forty to fifty pounds one time, she would be down for two days due to her chronic fatigue and fibromyalgia.  Tr. 261.  He did not mention Plaintiff's migraine headaches in the 2015 function report.

Plaintiff's husband's 2016 Function Report documented similar challenges.  He reported that she walks from room to room in the house and spends much of her time in bed or on the couch.  Tr. 300.  He noted that some days she does not get out of bed at all.  *Id*.  He also reported that Plaintiff has migraines that last for days, brain fog that causes forgetfulness, and that she is unable to sit or stand for any amount of time.  Tr. 299.  He reiterated that she was no longer able to ski, hike, travel with comfort, garden, hang sheet rock, cut firewood or dance.  Tr. 300.  He reported that she was unable to stand for long periods and performed one chore every other day. Tr. 300–01.  He again indicated that her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and use her hands.  Tr. 304.  He added that she also has difficulty with her memory, concentration, understanding, and following instructions, and said that she is unable to pay bills, handle a savings account, or use a checkbook because she cannot remember when to do it or if she has done it and struggles with organization and memory.  *Id*.; Tr. 302.  He described behaviors of distraction, depression, and pain.  Tr. 305. Plaintiff's husband also described the symptoms of her migraines, including headaches and vomiting that lasts for days.  Tr. 299.

The ALJ gave little weight to Plaintiff's husband's testimony because he "gave different descriptions of the claimant's abilities without indicating any deterioration in her condition."  Tr. 21.  In particular, the ALJ noted that her husband said in his 2015 report that she could complete twenty- to thirty-minute tasks such as yard and house work twice a day, four to five times a week, and shop for groceries and pick up her medications at the pharmacy once or twice a week.

*Id*.  Plaintiff's husband's 2016 function report, however, reported that she could perform only one chore such as laundry, vacuuming, or dishwashing every other day, and could not sit or stand for any period of time.  Tr. 21.  He also described significant impairment of Plaintiff's function due to her migraine headaches, which he did not mention in his 2015 function report.  Those discrepancies, relied on by the ALJ to diminish the weight given to Plaintiff's husband's lay witness testimony, were reasons germane to Plaintiff's husband.  Thus, the ALJ did not err by giving little weight to his testimony.

**IV.    Credit as True**

Plaintiff argues that the Court should credit as true the improperly discounted testimony of Plaintiff, Dr. Hurtado, and Plaintiff's husband.  Plaintiff argues that if their testimony is credited as true, then the record establishes that Plaintiff is disabled, and the Court should remand for an award of benefits.  In social security cases, the Court may remand for additional proceedings or for an award of benefits.  *E.g., Garrison*, 759 F.3d at 1019 (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test.  *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020.  Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.*  Third, it must be true that if the case is remanded and the improperly discredited evidence is credited as

true, then the ALJ would be required to find the claimant disabled.  *Id.*  To remand for an award of benefits, each part must be satisfied.  *Id.*  The "ordinary remand rule" is "the proper course" except in rare circumstances.  *Treichler*, 775 F.3d at 1101.  "[A] case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency only when all three elements are met.  *Id*.

Plaintiff established that some of the testimony before the ALJ was improperly discounted, but Plaintiff failed to demonstrate that the record is fully developed and that the ALJ would be required to find Plaintiff disabled if that testimony is credited as true.  Instead, Plaintiff simply makes a conclusory argument that the ALJ improperly discounted evidence, and the Court should remand for an award of benefits.  As a result, Plaintiff has not established that this case is one of the rare circumstances in which the Court should remand to the agency for an award of benefits, and the Court declines to do so.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED.

IT IS SO ORDERED.

DATED: _____June 16, 2020_____.


MARCO A. HERNÁNDEZ
United States District Judge